**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
JOSEPH FERLITO,

                            Plaintiff,

   -against-

HARBOR FREIGHT TOOLS USA, INC.,

                           Defendant.
------------------------------------------------------------X

FILED
CLERK

4/23/2025 12:34 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM OF DECISION AND ORDER**

Civil Action
No. 20-5615 (GRB) (SIL)

**GARY R. BROWN, United States District Judge**:

> "If I had four hours to chop down a tree, I'd spend the first two hours sharpening the axe."
>
>     -Aphorism incorrectly attributed to Abraham Lincoln. *See* https://quoteinvestigator.com/2014/03/29/sharp-axe/.

Plaintiff Joseph Ferlito commenced this lawsuit against defendant Harbor Freight Tools USA, Inc., alleging that an axe he purchased from defendant was defectively designed. Before this Court is defendant's motion to exclude plaintiff's proposed expert witness for failure to comply with Federal Rule of Evidence 702. For the reasons stated herein, the motion is DENIED.

### *Background*

The basic facts of this case are straightforward. Plaintiff purchased a splitting maul (an axe specially designed for splitting wood) from defendant in 2017. *See* Defendant's Statement of Material Facts, DE 39-1 ¶¶ 4-7. Several months later, while plaintiff was hanging the maul to store it, the head of the tool detached and struck plaintiff, causing injuries to his nose and left eye. *Id.* ¶¶ 23-25. Plaintiff initiated this lawsuit in 2020, alleging that the head detached due to a

1

design defect; defendant asserts the product failed due to plaintiff's misuse, which it contends is evidenced by a large crack in the handle. *Compare* Complaint, DE 1-1 ¶ 15 *with* DE 39-1 ¶ 90. Below is an image of the axe, which was admitted into evidence during a hearing.



To support his defective design claim, plaintiff seeks to offer expert testimony by Mark Lehnert, who identifies himself as a "consultant with products and liability history, extensive knowledge and experience in manufacturing and assembly, [and] mechanical and electrical engineering management." Lehnert Report, DE 39-9 at 9. Lehnert holds no engineering degrees, yet reports extensive experience designing and manufacturing power tools, holds over a dozen patents, and has worked in management positions in engineering departments at several corporations over a period of decades. *Id.* at 9-10; Tr. at 6-9. Lehnert contends the maul used by plaintiff was defectively designed because the handle and head were weakly bound with adhesive, leading to the accident. DE 39-9 at 7. He opines that good design requires securely

2

attaching the head and handle by "drilling a small diameter hole through the side of the maul, into and through the handle" and placing an aluminum pin "through the head" to reduce the possibility of separation. *Id.* at 5. Lehnert's report references several other mauls currently available for purchase that incorporate such a pin. *Id.* at 5-6.

Defendant moves to preclude Lehnert's testimony, arguing that he is unqualified as an expert because he lacks engineering degrees, and his experience is limited to designing power tools rather than manual tools. DE 39-1 at ¶¶ 42-47. Defendant further argues that Lehnert's opinion is unreliable because (i) he did not rely on any scientific, technical, or trade articles in preparing his report, and (ii) after completing the report, he entered a query into ChatGPT about the best way to secure a hammer head to a handle, which produced a response consistent with his expert opinion. *Id.* at ¶¶ 49-62. To address these contentions, the Court held a *Daubert* hearing on February 27, 2025, at which Lehnert testified. This opinion follows.

*Discussion*

*Lehnert's Qualifications*

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion … [if] the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). To meet this threshold, a party need only show that the proposed expert's "opinion will *probably* aid the trier of fact … Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 226 (N.D.N.Y. 1994) (internal quotations omitted), *aff'd sub nom. Lappe v. Honda Motor Co. of Japan*, 101 F.3d 682

3

(2d Cir. 1996). An expert need not hold advanced degrees, as "background and practical experience [may] qualify as 'specialized knowledge.'" *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995). Concerns about lack of "academic training…[are] properly explored on cross-examination [and bear on the] testimony's weight and credibility—not its admissibility." *Id.*

Courts in this circuit have held that, "[i]n the context of a products liability action, an expert witness is not strictly confined to his area of practice, but may testify concerning related applications." *Lara v. Delta Int'l Mach. Corp.*, 174 F. Supp. 3d 719, 730 (E.D.N.Y. 2016) (collecting cases) (internal quotations omitted). "Where an expert has the education or background to permit him to analyze a given set of circumstances, he can through reading, calculations, and reasoning from known scientific principles make himself very much an expert in the particular product even though he has not had actual experience in its manufacture." *Lappe*, 857 F. Supp. at 226–27; *see also Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223, 236 (E.D.N.Y. 2014) (finding that the expert, although not a professional mechanical or electrical engineer, was qualified to "opine on questions of the safety elements of a product's design" and that any lack of knowledge or experience with the product at issue would go "to the weight of his testimony"); *Manzo v. Stanley Black & Decker, Inc.*, No. 13-CV-3963 (MKB), 2024 WL 5319230, at *8 (E.D.N.Y. Mar. 20, 2024) ("[A]n expert need not specialize in … a specific type of tool, nor personally design safety features for specific tools to provide helpful context on prevailing safety practices, product design, or warnings").

Here, Lehnert meets the modest standards to qualify as an expert. Based on Lehnert's experience designing products and supervising engineering teams, his opinion as to a safer design for a splitting maul will likely be helpful to a jury of laypeople. Lehnert's lack of

4

engineering degrees or professional licenses does not necessitate exclusion of his testimony; opposing counsel can address on cross-examination. Furthermore, the fact that Lehnert's professional experience is limited to power tools does not preclude his testimony here. As Lehnert explained during the hearing:

> [M]y experience here is in the cojoining of dissimilar materials. When you add -- when you put two things together, you either have to connect them mechanically, glue them with some type of material that forms a cohesive joint. Sometimes you'll solder things together. You can weld things together. You can spot them. So this is an assembly issue, which is my specialty, [] assembly process engineering.

Tr. at 12. Lehnert's familiarity with joining dissimilar materials in connection with power tools appears applicable to a simpler manual tool. *See Lara*, 174 F. Supp. 3d at 732 ("[A] lack of specific familiarity with a product, machine or specific field does not, in itself, render an expert unqualified to proffer their opinion."). Accordingly, the Court finds that Lehnert is qualified to testify as an expert.

*Reliability of Lehnert's Testimony*

Federal Rule of Evidence 702 states that a witness, once qualified as an expert, may only testify "if [1] the testimony is based upon sufficient facts or data; [2] the testimony is the product of reliable principles and methods; and [3] the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court provided a list of factors trial judges should use to evaluate the reliability of expert testimony, which the Second Circuit summarized as follows:

> Although Rule 702 sets forth specific criteria for the district court's consideration, the *Daubert* inquiry is fluid and will necessarily vary from case to case. The Supreme Court has identified a number of factors bearing on reliability that district courts may consider, such as (1) whether a theory or technique "can be (and has been) tested," *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786; (2) "whether the theory or technique has been subjected to peer review and publication," *id.;* (3) a technique's "known or potential rate of error," and "the existence and maintenance of standards controlling the technique's operation," *id.* at

5

>594, 113 S.Ct. 2786; and (4) whether a particular technique or theory has gained "general acceptance" in the relevant scientific community, *id.*
>
>…
>
>These factors do not constitute, however, a "definitive checklist or test." *Daubert,* 509 U.S. at 593, 113 S.Ct. 2786. Rather, "[t]he inquiry envisioned by Rule 702 is ... a flexible one," *id.* at 594, 113 S.Ct. 2786, and "the gatekeeping inquiry must be tied to the facts of a particular case," *Kumho Tire,* 526 U.S. at 150, 119 S.Ct. 1167 (internal quotation marks omitted).

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002).

"In a products liability case, the touchstone of an expert's report should be a comparison of the utility and cost of the product's design and alternative designs." *Hilaire*, 54 F. Supp. 3d at 244 (internal quotations omitted). "This comparison should usually be supported by testing of the alternative design." *Id.* However, "such testing is not required…if the expert can point to an existing design in the marketplace" that incorporates the expert's proposed alternative. *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 178 (E.D.N.Y. 2008); *see also Bah v. Nordson Corp.*, No. 00-CV-9060 (DAB), 2005 WL 1813023, at *8 (S.D.N.Y. Aug.1, 2005) ("[T]he interlock switch and nozzle diffuser proffered by [the expert] do exist in the marketplace in products similar to the subject machine that he helped design, and thus testing is not needed to establish their feasibility.").

Lehnert's proposed testimony meets the standard for reliability. Initially, Lehnert's report focuses almost exclusively on potential flaws in the design of defendant's maul and proposes an alternative design—specifically, incorporating a metal pin to better secure the maul's head to its handle—that he asserts would be safer and cost-effective. DE 39-9 at 5. Although Lehnert concedes he did not test his proposed design, he identified existing products, including other splitting mauls, that use such a pin, meaning that, like in *Humphrey* and *Bah*, testing is not required to establish the reliability of Lehnert's testimony. *Id.* at 5-6. Finally, the

6

fact that Lehnert did not rely on any peer-reviewed articles in preparing his report is appropriately addressed via cross-examination rather than by exclusion. *See Amorgianos*, 303 F.3d at 266–67 (2d Cir. 2002) ("This is not to suggest that an expert must back his or her opinion with published studies that unequivocally support his or her conclusions…. [L]ack of textual support may go to the weight, not the admissibility of the expert's testimony."). Accordingly, the Court finds that Lehnert's testimony is sufficiently reliable to present to the jury.

*Lehnert's Use of ChatGPT*

Federal courts have grappled with the appropriateness of an expert's use of artificial intelligence to form opinions, and the validity of AI as a research tool in litigation more broadly. *See Kohls v. Ellison*, No. 24-CV-3754 (LMP)(DLM), 2025 WL 66514, at *5 (D. Minn. Jan. 10, 2025) (excluding expert testimony when the expert's affidavit contained ChatGPT-generated references to non-existent academic articles); *Mata v. Avianca*, Inc., 678 F. Supp. 3d 443, 464-65 (S.D.N.Y. 2023) (sanctioning lawyers and law firm pursuant to Rule 11 for using ChatGPT to find non-existent cases, which the attorneys cited in a filing); *Park v. Kim*, 91 F.4th 610, 615-16 (2d Cir. 2024) (referring attorney to the Court's Grievance Panel for relying on ChatGPT to write a brief containing non-existent cases).

In *Kohls*, the expert's "citation to fake, AI-generated sources in his declaration … shatter[ed] his credibility with th[e] Court" such that his testimony would not be reliable as required by Rule 702 and *Daubert*. 2025 WL 66514, at *4. However, the Court emphasized that experts can use "AI for research purposes" given its "potential to revolutionize legal practice for the better." *Id*. *Daubert* issues arise only "when attorneys and experts abdicate their independent judgment and critical thinking skills in favor of ready-made AI-generated answers." *Id*.

7

Here, there is little risk that Lehnert's use of ChatGPT impaired his judgment regarding proper methods for securing the maul's head to its handle. The record from the hearing reflects that Lehnert used ChatGPT after he had written his report to confirm his findings, Tr. at 46, which were based on his decades of experience joining dissimilar materials, Tr. at 12. During the hearing, Lehnert professed to being "quite amazed" that the "ChatGPT search confirmed what [he] had already opined." Tr. at 47. On re-direct, Lehnert reiterated that he did not rely on ChatGPT:

> Q: Now, the other items that you have consulted and listed, [including] ChatGPT … those aren't things that you relied upon in reaching your conclusions and opinions, correct?
>
> A: Correct.

Tr. at 67. There is no indication that Lehnert used ChatGPT to generate a report with false authority or that his use of AI would render his testimony less reliable. Accordingly, the Court finds no issue with Lehnert's use of ChatGPT in this instance.

*Use of Hyperbole*

At the hearing, defense counsel noted that Lehnert displayed a troubling propensity for hyperbole. Tr. 76 ("[T]his is the classic example of *ipse dixit*: Because he says it, it's true"). The Court is inclined to agree. There were several instances during the hearing when Lehnert stated matters in a sweeping manner that raised questions about accuracy. *See, e.g.*, Tr. 12 (stating he is an engineer); Tr. 24, 53-57 (implying that defendant failed to comply with ISO standard before indicating that no such standard exists).

To be clear, these verbal embellishments, standing alone, do not represent a basis for excluding the witnesses' testimony. However, while the Court is permitting the proffered

8

testimony, plaintiff's counsel is cautioned that in preparing the witness for trial, care should be taken to instruct the witness to avoid overstatement during his testimony before the jury.

*Conclusion*

For the reasons set forth herein, defendant's motion to exclude plaintiff's expert witness is denied.

**SO ORDERED.**

Dated: Central Islip, New York
      April 23, 2025

                                              /s/ Gary R. Brown
                                              GARY R. BROWN
                                              United States District Judge